# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| SANDRA K. HENDRICKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:20-CV-00054-NCC |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Sandra K. Hendricks ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 23), Defendant has filed a brief in support of the Answer (Doc. 28), and Plaintiff has filed a reply brief (Doc. 29). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 10).

## I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on July 17, 2018 (Tr. 143-44). Plaintiff was initially denied on September 26, 2018, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 80, 88-89). After a hearing, by decision dated December

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

17, 2019, the ALJ found Plaintiff not disabled (Tr. 9-29).  On August 22, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-5).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2023, and that Plaintiff has not engaged in substantial gainful activity ("SGA") since October 27, 2017, the alleged onset date (Tr. 14).  In doing so, the ALJ noted that Plaintiff worked after the alleged disability onset date but that the work activity did not rise to the level of SGA (Tr. 14-15).  The ALJ found Plaintiff has the severe impairments of Kienböck's disease,[2] dequervain tenosynovitis, major depressive disorder, generalized anxiety disorder and post-traumatic stress disorder ("PTSD"), but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16).  After careful consideration of the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations (Tr. 17).  Plaintiff cannot climb ladders, ropes or scaffold (*Id.*).  Plaintiff can occasionally climb ramps and stairs, balance, stoop, kneel, couch and crawl (*Id.*).  Plaintiff can frequently finger bilaterally (*Id.*).  Plaintiff can have no more than occasional exposure to vibration and hazards such as unprotected heights (*Id.*).  She can perform work limited to simple, routine, and repetitive tasks involving only simple, work-related decisions

---

[2] Kienböck's disease is a condition where the blood supply to one of the small bones in the wrist, the lunate, is interrupted.  Bone is living tissue that requires a regular supply of blood for nourishment.  If the blood supply to a bone stops, the bone can die.  Damage to the lunate causes a painful, stiff wrist and, over time, can lead to arthritis. *Kienböck's Disease*, Am. Acad. Orthopaedic Surgeons, https://orthoinfo.aaos.org/en/diseases--conditions/kienbocks-disease/ (last visited Dec. 7, 2021).

2

(*Id.*).  Plaintiff can perform low stress work, defined as that with few, if any, work place changes and no work at a production rate pace, defined as work with an assembly line or conveyor belt (*Id.*).  Plaintiff can have no contact with the public (*Id.*).  Plaintiff can work in proximity to but not in coordination with others and, after an initial training period, only occasional contact with supervisors (*Id.*).  The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including bakery workers, laundry folder, and janitorial (Tr. 23-25).  Thus, the ALJ concluded that Plaintiff has not been under a disability from October 27, 2017, through the date of the decision (Tr. 25).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484

F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's

decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff argues that the ALJ erred in failing to properly evaluate the opinion of treating psychiatrist Jeffrey Harden, D.O. in that the ALJ failed to consider the factors of supportability, consistency, relationship with the claimant, or specialization (Doc. 23 at 11-14). Second, Plaintiff asserts that the ALJ failed to properly analyze the opinion of examining psychologist James Tichenor, Ph.D. (*Id.* at 14-17). Third, Plaintiff argues that the ALJ erred in finding the opinion of non-examining non-treating psychologist Gretchen Brandhorst, Psy.D. "persuasive" (*Id.* at 17-20). Because the

ALJ improperly evaluated the medical opinion evidence from treating psychiatrist Jeffrey Harden, D.O., the Court will address that issue alone.

Given that Plaintiff filed her application after March 27, 2017, the new Social Security regulations regarding the evaluation of medical opinion evidence applied to her case.  20 C.F.R. § 404.1520c.  Under the new regulations, an ALJ is no longer required to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians.  20 C.F.R. § 404.1520c(a).  Rather, the ALJ is to consider factors in determining how persuasive to find medical opinions and prior administrative medical findings.  20 C.F.R. § 404.1520c(b).  An ALJ must explain how she considered the factors of supportability and consistency in her decision, but need not explain how she considered the other factors.  20 C.F.R. § 404.1520c(b)(2).  The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

On February 21, 2019, Jeffrey Harden, D.O. ("Dr. Harden") completed a "Medical Assessment of Ability to do Work Related Activities" (Tr. 338-39).  Dr. Harden found Plaintiff had "no useful ability to function in" the following areas: relate to co-workers; deal with the public; interact with supervisor(s); respond appropriately to criticism from supervisors; deals

with work stresses; and maintain attention/concentration (Tr. 338).  In support of these findings, Dr. Harden indicated:

> Ms. Hendricks' depression manifests itself with dysphoria ranging from anxious to empty but with a background of frustration and irritability that is easily solicited and clearly communicated to those around her.  She would magnify any perceived interpersonal slights from others in or around her workplace and respond in emotionally antagonist manners.

(*Id.*).  While Dr. Harden opined very few limitations in Plaintiff's ability to make performance adjustments, he opined Plaintiff would be unable to: behave in an emotionally stable manner; related predictably in social situations; demonstrate reliability in work production; or demonstrate reliability in attendance (Tr. 339).  Dr. Harden further opined that Plaintiff would miss an average of two or more days of work a month (*Id.*).

On May 21, 2019, Dr. Harden completed several interrogatory questions regarding Plaintiff's mental health conditions (Tr. 341-42).  On this form, Dr. Harden indicated that Plaintiff was diagnosed with recurrent major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (Tr. 341).  Dr. Harden also confirmed that approximately two times per month Plaintiff will have an anxiety attack so severe that she will lose consciousness and black out and that twice per week Plaintiff will have an anxiety attack which lasts for approximately one hour and that she will be very fatigued after the attack (*Id.*).  Dr. Harden opined that these attacks are a product of her anxiety disorder and are manifestations of anxious thoughts, feelings and memories being amplified by her PTSD (*Id.*).  Dr. Harden additionally confirmed Plaintiff's self-report that she has crying spells twice a week that last at least 20 minutes and that it takes her one hour to recover from a crying spell (Tr. 342).  Dr. Harden indicated that these crying spells are a direct product of her recurrent major depressive disorder and her generalized anxiety disorder (*Id.*).  Dr. Harden further confirmed Plaintiff's report that

7

she is unable to sleep on an average of two nights per week and then will be very fatigued the next day, finding these symptoms to be "direct products" of Plaintiff's recurrent major depressive disorder and her PTSD (*Id.*).

The ALJ found Dr. Harden's opinion, which she characterized as including both the medical assessment and Dr. Harden's answers to the interrogatory questions, "not persuasive as the [Plaintiff's] difficulties in interacting are [] primarily based on her own self-report" (Tr. 23). In support of this assessment, the ALJ noted that Plaintiff recently was out shopping and lunching with her sister, "which suggests a much higher ability to interact with others in a public setting than her self-reports of isolation and rarely leaving her home" (*Id.*).  The ALJ further noted that "[t]he record supports no more than moderate limitations in any area of mental functioning" (*Id.*).

The Court finds that the ALJ erred in evaluating the persuasiveness of Dr. Harden's opinion by failing to appropriately consider the opinion's "supportability."  In articulating how she considered the supportability factor, an ALJ may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, that the physician did not examine the claimant, or that the physician did or did not provide a detailed explanation for the opinion. *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases).  Here, the ALJ did not address any of these matters and did not apparently articulate how she considered the supportability factor.  To the extent the Court could construe the ALJ's finding that "[t]he assessment is not persuasive as the Plaintiff's difficulties in

8

interacting are [] primarily based on her own self-report," which the ALJ found as not credible,[3] as addressing the supportability factor, the Court finds this statement to be inconsistent with a review of the opinion.  While the questions posed to Dr. Harden by way of interrogatory were based on Plaintiff's self-reports, his responses to those questions included his own assessments and conclusions.  Furthermore, Dr. Harden's medical assessment, while primarily in checklist format, included a lengthy paragraph detailing Plaintiff's mental health conditions and how they manifest in specific limitations including her ability to interact with others.  Thus, the ALJ erred in failing to appropriately address the supportability of Dr. Harden's opinion.

Under recent Eighth Circuit caselaw, an ALJ's failure to address either the consistency or supportability factors in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, No. 21-1619 (8th Cir. Sept. 20, 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)).  Accordingly, the Court finds that remand is required because the ALJ erred in evaluating the persuasiveness of Dr. Harden's opinion by failing to appropriately consider the opinion's "supportability."

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded.  On remand,

---

[3] Having reviewed the entirety of the record, the Court is further concerned that the ALJ may not have properly evaluated Plaintiff's subjective complaints especially in light of the ALJ's significant reliance on Plaintiff's single shopping trip and associated lunch with her sister.  A claimant need not be totally bedridden to be disabled.  *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005); *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999).

9

the ALJ is directed to reevaluate the opinion of Dr. Harden; further develop the medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 23rd day of February, 2022.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE